J-S93038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RICHARD MERCALDO, JR., | |
| Appellant | No. 1054 EDA 2016 |

Appeal from the PCRA Order March 4, 2016
in the Court of Common Pleas of Delaware County
Criminal Division at No.: CP-23-CR-0001689-1999

BEFORE:  DUBOW, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED FEBRUARY 06, 2017**

Appellant, Richard Mercaldo, Jr., appeals from the order denying his motion for DNA testing pursuant to Section 9543.1 of the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.[1]  We affirm.

The PCRA court aptly set forth the relevant facts and procedural history of this case as follows:

> Appellant's mother financially supported Appellant until she died in November of 1994.  After Appellant's mother's death, Appellant's father refused to give Appellant any additional money and told Appellant that he ([F]ather) was dating again.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Although Appellant titled his filing a petition rather than a motion, we will refer to the filing as a motion throughout this memorandum, for consistency with the applicable statutory provision.  **See** 42 Pa.C.S.A. § 9543.1(a)(1).

On December 28, 1995, at approximately 11:00 p.m., Appellant and his friend, Michael Kent, went to Father's house, and Appellant told Father that he was going to move in with Father. Father indicated that he would not permit the move, and following a heated argument, Appellant stabbed Father. Appellant then took forty dollars ($40.00) from Father and, with Kent in the car, put the knife in a dumpster behind the local YMCA.

On December 29, 1995, Appellant returned to Father's house and notified the police that Father was dead. Subsequently, Kent told the police that Appellant murdered his father, Appellant was arrested, and Appellant was charged with [the murder and] various other crimes.

Following a jury trial, Appellant was convicted of first degree murder and possession of an instrument of a crime. On January 21, 2000, Appellant was sentenced to life imprisonment. After filing a direct appeal, his judgment of sentence was affirmed on June 14, 2001. Appellant did not seek review of that decision with the Pennsylvania Supreme Court.

According to the record, Appellant filed his first [PCRA] petition on or about July 18, 2001. The petition was denied on December 30, 2004. On March 12, 2014, the Appellant filed a *pro se* "[Motion] for Post Conviction DNA Testing." This court appointed counsel who filed an "Amended Post Conviction Relief Act Petition" on January 29, 2015 and on November 2, 2015 counsel filed a "Motion [Requesting] DNA Testing." Following a hearing on these motions, this court ultimately concluded that the Appellant was not entitled to relief and denied his motions on March 4, 2016. It is from that order that he now [timely] appeals. While the court did not request a concise statement pursuant to Pa.R.A.P., Rule 1925, Appellant filed one on June 7, 2016. . . .

(PCRA Court Opinion, 7/12/16, at 1-2) (footnote and record citation omitted).[2]

Appellant raises the following question for our review: "Did the [PCRA] court err in denying [his motion] requesting STR DNA testing pursuant to 42 Pa.C.S.A. § 9543.1 as to certain items of evidence still in possession of the Delaware County District Attorney's Office?" (Appellant's Brief, at 4) (unnecessary capitalization omitted; citation formatting provided).[3] This issue does not merit relief.

> Initially, we note that, when examining the propriety of an order resolving a request for DNA testing, we employ the PCRA standard of review. On appeal from the denial of PCRA relief, our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error. In the present matter, we are considering the PCRA court's denial of a request for DNA testing. In this context, the [timeliness] filing requirements of 42 Pa.C.S.[A.] § 9545 have not yet been implicated.

*Commonwealth v. Gacobano*, 65 A.3d 416, 419 (Pa. Super. 2013) (citations omitted).

> Generally, the trial court's application of a statute is a question of law that compels plenary review to determine

---

[2] The PCRA court entered an opinion on July 12, 2016. *See* Pa.R.A.P. 1925(a).

[3] "'STR' stands for short tandem repeat, and involves viewing a sequence of DNA that is repeated exactly one repeat sequence after another in tandem, like the cars of a train." *Commonwealth v. Jones*, 811 A.2d 1057, 1061 n.4 (Pa. Super. 2002), *appeal denied*, 832 A.2d 435 (Pa. 2003) (record citation omitted).

whether the court committed an error of law. When reviewing an order denying a motion for post-conviction DNA testing, this Court determines whether the movant satisfied the statutory requirements listed in Section 9543.1. We can affirm the court's decision if there is any basis to support it, even if we rely on different grounds to affirm.

*Commonwealth v. Walsh*, 125 A.3d 1248, 1252–53 (Pa. Super. 2015) (citation omitted).

Instantly, Appellant petitioned the PCRA court for DNA testing after he watched a television program about DNA evidence on CSPAN. (*See* PCRA Motion, 3/12/14, at unnumbered page 1 ¶ 3). He requested testing of "the victim's coat, hat, shirt, undershirt, hat [sic], tie, fingernail clippings, or other biological evidence," and averred that his Father's assailant may have left DNA evidence during the "obvious attack . . . and scuffle[.]" (*Id.* at ¶¶ 5-6). Counsel then requested STR DNA testing of additional items, including the victim's glasses and keys, and a bloodstained piece of rug and handkerchief. (*See* Amended PCRA Motion, 1/29/15, at unnumbered pages 1-2; Motion Requesting DNA Testing, 11/02/15, at unnumbered pages 2-3). In his appellate brief, Appellant acknowledges that DNA testing was available at the time of his trial, but argues that the specific form of testing that he seeks (STR) was not available at that time. (*See* Appellant's Brief, at 8).

The applicable statutory provisions state, in relevant part, as follows:

**(a) Motion.—**

(1) An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment or awaiting execution because of a sentence of death may apply by making a written

motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

(2) The evidence may have been discovered either prior to or after the applicant's conviction. The evidence shall be available for testing as of the date of the motion. If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

\* \* \*

**(c) Requirements.—**In any motion under subsection (a), under penalty of perjury, the applicant shall:

(1) (i) specify the evidence to be tested;

(ii) state that the applicant consents to provide samples of bodily fluid for use in the DNA testing; and

(iii) acknowledge that the applicant understands that, if the motion is granted, any data obtained from any DNA samples or test results may be entered into law enforcement databases, may be used in the investigation of other crimes and may be used as evidence against the applicant in other cases.

(2) (i) assert the applicant's actual innocence of the offense for which the applicant was convicted; and . . .

\* \* \*

(3) present a *prima facie* case demonstrating that the:

(i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

(ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:

(A) the applicant's actual innocence of the offense for which the applicant was convicted; . . .

**(d) Order.—**

(1) Except as provided in paragraph (2), the court shall order the testing requested in a motion under subsection (a) under reasonable conditions designed to preserve the integrity of the evidence and the testing process upon a determination, after review of the record of the applicant's trial, that the:

(i) requirements of subsection (c) have been met;

(ii) evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been altered in any material respect; and

(iii) motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice.

(2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:

> (i) would establish the applicant's actual innocence of the offense for which the applicant was convicted; . . .

42 Pa.C.S.A. § 9543.1(a), (c), (d).

Thus, under Section 9543.1(a):

> The statute sets forth several threshold requirements to obtain DNA testing: (1) the evidence specified must be available for testing on the date of the motion; (2) **if the evidence was discovered prior to the applicant's conviction, it was not already DNA tested because (a) technology for testing did not exist at the time of the applicant's trial; (b) the applicant's counsel did not request testing in a case that went to verdict before January 1, 1995; or (c) counsel sought funds from the court to pay for the testing because his client was indigent, and the court refused the request despite the client's indigency**.

Additionally:

> The text of the statute set forth in Section 9543.1(c)(3) and reinforced in Section 9543.1(d)(2) requires the applicant to demonstrate that favorable results of the requested DNA testing would establish the applicant's actual innocence of the crime of conviction. The statutory standard to obtain testing requires more than conjecture or speculation; it demands a *prima facie* case that the DNA results, if exculpatory, would establish actual innocence.

> Significantly, in DNA testing cases, an absence of evidence is not evidence of absence. . . .

> Further, Section 9543.1(d) requires the petitioner to make a timely request for DNA testing. . . .

**Walsh**, **supra** at 1254–55 (case citations, quotation marks, and original

emphasis omitted; emphasis added).

- 7 -

Here, the evidence Appellant seeks to have DNA tested was discovered before his conviction. *See* 42 Pa.C.S.A. § 9543.1(a)(2). The PCRA court determined that Appellant is not entitled to DNA testing of these items because he failed to meet the threshold requirements set forth in Section 9543.1(a)(2). (*See* PCRA Ct. Op., at 5). Upon review, we agree. Specifically, the technology for DNA testing existed at time of Appellant's trial; the jury reached its verdict on December 10, 1999 (nearly five years after January 1, 1995); and the trial court had not refused a request for funds for testing. *See* 42 Pa.C.S.A. § 9543.1(a)(2). Consequently, Appellant has not met his threshold burden under Section 9543.1(a)(2). *See Walsh*, *supra* at 1257 (concluding appellant unable to satisfy threshold requirements necessary to obtain post-conviction DNA testing of evidence discovered and available before trial where DNA testing technology was available at time of trial, jury reached its verdict after January 1, 1995, and court did not refuse request for funds for DNA testing).

With respect to Appellant's assertion that he is entitled to DNA testing because the specific form of testing that he requests (STR) was unavailable at the time of trial, (*see* Appellant's Brief, at 8), this claim is waived. In his appellate brief, Appellant does not explain the difference between STR testing and the DNA testing available at the time of his trial, or discuss why this case requires this specific type of testing, nor does he cite any controlling legal authority on this issue. (*See id.* at 8-9). Thus, Appellant's

argument is waived for his failure to develop it properly. **See** Pa.R.A.P. 2119(a)-(c).

Moreover, regarding advancements in DNA testing technology, our Supreme Court has stated: "[t]he statute recognized that the testing available at the time of its enactment was of sufficient reliability that defendants could seek DNA testing, in cases where good faith claims of innocence were timely raised." **Commonwealth v. Edmiston**, 65 A.3d 339, 358 (Pa. 2013), *cert. denied*, 134 S.Ct. 639 (2013). Advancements in technology do not explain why Appellant did not seek DNA testing at the time of trial using the technology available to him, or, at the very least, request testing in 2007, when he claims STR testing was adopted in Pennsylvania. **See id.**; (**see also** Appellant's Brief, at 8-9). Therefore, Appellant's argument would not alter our determination that he failed to meet the threshold requirements of Section 9543.1(a)(2).[4]

In sum, we conclude the PCRA court properly denied Appellant's motion for post-conviction DNA testing. **See Gacobano**, **supra** at 419. Accordingly, we affirm the order of the PCRA court.

_____

[4] We also observe the PCRA court's finding that, even if Appellant had satisfied the threshold requirements, he failed to establish a *prima facie* case of actual innocence, where the evidence included testimony from an eyewitness to the murder and from a friend to whom Appellant had confessed, and there was no evidence that the victim struggled with his assailant. (**See** PCRA Ct. Op., at 5-6); **see also** 42 Pa.C.S.A. § 9543.1(c)(3)(ii)(A); **see id.** at (d)(2)(i).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/6/2017</u>